## 28351. PERRYMAN v. THE STATE.

820

DECIDED DECEMBER 4, 1940.   REHEARING DENIED DECEMBER 20, 1940.

*H. A. Allen,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, E. E. Andrews,* contra.

GARDNER, J.   The defendant was charged in three separate indictments with the offense of sodomy · with three different individuals on different occasions.   He was an officer at the Fulton County Industrial School,· an institution where juvenile delinquents are confined instead of being sent to the chain-gang.   His duties were the supervising and directing of the boys sent there by the juvenile court.   The case now being considered was with reference to a boy seventeen years of age.   He testified that the defendant had him come to the defendant's room under the pretext that he

wanted him to wash some clothes for him, and when there he took hold of him and felt him and proposed the act; that the witness objected and the defendant said to him: "If you don't I am going to make it hard for you; . . I will slap you down every time I see you;" and that the act then occurred. The witness said further: "He was over me directing my habits." He informed another official of the occurence within three hours. Another boy, seventeen years old, also was an inmate sent to the institution, with whom it was charged that the defendant committed an act of sodomy. He testified that the defendant had him come to the defendant's room and started playing with him, and then proposed the act, and threatened him if he refused; and that the act was then consummated. Another inmate testified that an act of sodomy occurred between him and the defendant under almost the same conditions as were stated by the others. One of these witnesses, and another as well, testified to having seen the defendant committing an act of sodomy with two other officers of the institution. The defendant was acquitted on the indictment charging sodomy with a fellow officer. The court passed the following order denying a new trial: "There is no corroboration if prosecuting witnesses were accomplices. They were accomplices unless they acted under legal duress operating at the time. There was none such unless it be deduced from the fact that they were in confinement and under such domination as prevented them from being free agents. This law point should be decided by the appellate courts. While it may be, although it is not perfectly clear to the court, that they did not act under legal duress, nevertheless the court feels, since the State has no appeal, that this law point should be resolved by this court in favor of the State, especially since the defendant has an appeal and can have the matter finally adjudicated. The motions for new trials in these cases, as amended, are hereby overruled, and a new trial in each case is hereby denied."

The first question presented for consideration is whether the boy with whom the alleged offense of sodomy was committed was an accomplice. The Code, § 38-121, provides that "in any case of felony where the only witness is an accomplice . . corroborating circumstances may dispense with another witness;" otherwise one witness is insufficient. In *Comer* v. *State*, 21 *Ga. App.* 306 (94 S. E. 314), it was said that where two persons *"voluntarily* have

carnal knowledge and connection against the order of nature with each other, they are both guilty of sodomy." (Italics ours.) If the boy with whom the sodomy act was alleged to have been committed was an accomplice, a verdict could not be based on his evidence alone unless it was corroborated. A proper rule for determining whether a witness is an accomplice was laid down in *Montford* v. *State,* 144 *Ga.* 582, 584 (87 S. E. 797), where the following instruction was approved: "Participation in the commission of the same criminal act, and in the execution of a common criminal intent, is necessary to render one criminal in a legal sense, —an accomplice of another." We think the decision in the *Comer* case, cited above, makes those who voluntarily have unnatural sexual congress with each other guilty of sodomy, and that if the witness here voluntarily consented to the act he also was guilty of the crime. This distinction is made in the *Montford* case, supra. We do not think that if the person here named had been a girl, instead of a boy, and that act had been a natural one, it would have constituted rape, because the element of force would have been lacking. Rape must be forcible and against the will. We can conceive of situations where the act might be against the will of the party and yet not done with force. We might ask whether a woman who, because of threats or what might amount to duress, allowed a man to have sexual connection with her, could be convicted of fornication along with the man? In the *Comer* case, cited above, it was said that where the parties voluntarily committed the act each would be guilty. If the resistance to the consummation of the act was prevented because of threats or other conduct, we do not think it may be said that the act done was voluntary, although the party seemingly assented. In People v. Conklin, 122 Cal. App. 83, 91 (10 Pac. 2d, 98), which was a sodomy case and involved the testimony of an accomplice, it was said: "But there is a decided difference in law between mere submission and actual consent, . . 'consent' differs very materially from 'assent.' The former implies some positive action and always involves submission. The latter means passivity or submission, which does not include consent." In that case one of the parties was a boy of twelve years; the other a full-grown man. The court said, "It is neither unreasonable nor unnatural to assume that such a child, in the hands of a strong man, might be easily overawed into submit-

ting without actually consenting." Joint operation of act and intention is necessary to constitute the commission of a crime. "Intention may be manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused." Code, § 26-202. In People *v.* Miller, 66 Cal. 468 (6 Pac. 99), it was said: "A child thirteen years of age, who assists in the commission of a felony under the threats and coercion of another, is not an accomplice, and a conviction may be had upon his uncorroborated testimony." "A child who participates in a criminal offense under threats and coercion, or a person who, through fear of immediate danger to life or limb, conceals the commission of a crime is not an accomplice." 14 Am. Jur. 842, § 111.

The Supreme Court in *Raiford* v. *State,* 68 *Ga.* 672, 674, discussing a case of incest, said that such an unnatural crime is generally the act of a man upon a woman over whom by natural ties of kindred he has almost complete control, and that he alone is to blame, and further: "There is a force used, which, while it can not be said to be that violence which constitutes rape, is yet of a character that is almost as overpowering." It was there said that the evidence as against the man made out a case of incestuous fornication. It was not said that the girl would have been guilty herself, for such question was not being considered. Her evidence was corroborated, and it did not become necessary to consider the question presented here. One who voluntarily participates in an unnatural act of sexual intercourse with another is also guilty of sodomy. One who does not so participate is not guilty. "Voluntary" as defined in Webster's International Dictionary (1922) means, "Proceeding from the will; unconstrained by interference; unimpelled by another's influence; spontaneous." The principal witness in this case was a boy seventeen years of age, who was in the charge and under the supervision of the defendant. The defendant might enforce his orders by compulsion, and his control was more absolute than exists in ordinary relationships. Fear and force were powerful factors in the supervision and control of the witness by the defendant. The jury was authorized to find from his testimony that he submitted to the advances of the defendant because of their relationship and the threats made. As was said in the California case cited above he "might be easily overawed into

submitting without actually consenting." See *Burns* v. *State,* 89 *Ga.* 527 (6) (15 S. E. 748). In *Chandler* v. *State,* 124 *Ga.* 821 (53 S. E. 91), it was said: "Though the fear of being convicted of an offense against the penal laws of the State will not excuse a witness for swearing falsely, yet where upon a succeeding trial he admits the falsehood of the testimony formerly given and deposes to the contrary of that testimony, attributing his perjury to the fear above set out, it may afford a moral explanation sufficient to account to the jury for the false testimony; and where the explanation is satisfactory to the jury, the witness may be believed with or without corroborating circumstances or supporting evidence." Duress or undue influence whereby the will of another is substituted for the will of the testator invalidates a will (Code, § 113-208); it destroys a contract (§ 20-503); it makes voidable a sale (§ 96-201). Threats of bodily or other harm, or other means amounting to coercion or tending to coerce the will of another and actually causing him to do an act contrary to his will, are duress. § 96-209. Applying the language in the *Montford* case, cited above, we think voluntary participation in the commission of the same criminal act is necessary to make one an accomplice. A participation that is the result of the will of another is not such participation as will make such a participant guilty. The animus furandi is lacking. The court here instructed the jury: "An accomplice is one who knowingly and voluntarily, and with a common intent, unites in the commission of a crime, and who could be convicted of that crime under this definition. . . I instruct you that one who does an act under duress or fear of his life or limb is not guilty of a crime." Measured by this correct rule, the jury was authorized to convict the defendant on the testimony of the witness with whom the act was consummated.

We do not think the order passed by the judge showed that there was a failure on his part to exercise his judicial discretion in granting or refusing a motion for new trial, nor was it violative of the principle which was so well stated by Justice Grice in *Mills* v. *State,* 188 *Ga.* 616, 625 (4 S. E. 2d, 453). It is clear from the opinion that the learned judge was concerned only as to the legal principle which we have discussed above. His charge was an unusually clear statement of what this court thinks was a correct principle of law. In view of our ruling that the principal witness for the State was

not necessarily an accomplice, and that the jury so found under proper instructions from the court, it becomes unnecessary to decide whether the other evidence introduced amounted to such corroboration as would support the testimony of an accomplice. Such evidence was clearly admissible under the principle that it tended to show motive, intent, purpose, and the like, and the *bent of mind* of the defendant. It is unnecessary to cite the numerous decisions sustaining this principle. Under the decision here made, the special assignments of error are without merit. The evidence supported the verdict; and the court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*